And a very good morning, Your Honor. Brian Kabatek appearing on behalf of the appellant in the case. May it please the court, an appreciation of gratitude for taking this case out of order to accommodate my schedule. And I'm sorry if I mucked up the court schedule in the process. This is not an unusual or unique issue in California, which is the control of registered opticians who exercise control over doctors of ophthalmology and opmetrics. This is a situation that the California legislature have dealt with for at least 100 years. And most recently, before the recent changes to specifically business and professions code section 655, the statute at issue here prohibited any kind of exercise of control of really any kind over any kind of doctor exercising any control over doctors of ophthalmology. And what we have here is a legislative scheme that is clear and ambiguous. It is to protect the public. The history is to protect the public and prevent people from being forced into eye exams by doctors who are controlled by the people who sell the very eyewear. We're somewhat familiar with the legislative scheme. And the regulatory scheme that accompanies it. But the district court dismissed this case just for lack of standing. And the standing, correct. And the standing in this case, they. Is that the only issue we need to decide? That appears to be the only issue, is whether or not the complaint adequately pled standing. Why did the district court err in its standing determination? Well, I think the first thing to key in on is whether or not we adequately pled that under Business and Professions Code Section 17203, there was sufficient allegations of lost money or lost economics in this transaction. And what we did in pleading this complaint was we took this court's decision in Hinojos, which I know your honor was on that panel, and we matched it almost identically. In Hinojos, you had coal stores advertising things on sale. They weren't on sale. The plaintiff in Hinojos adequately pled they had standing based upon the fact that they parted with money that they otherwise would not have parted with in that case had they known the truth behind the misrepresentation. So the first thing we adequately alleged here was the misrepresentation. Independent doctors of optometry. That was the specific allegation that was made here in the complaint and that the store made. So is there an allegation in the complaint that Mr. Omidy? Ms. Ms. Omidy would not have gone through with the eye exam? Yes, your honor. At Walmart? Had she known that purportedly the arrangement was such that the optometrist was not independent? Specifically, exactly yes. That very allegations made in the complaint, in addition to the allegation that there were signs in the store that purported to claim the doctor was independent, plus the fact that had Ms. Omidy known of the true relationship between the optometrist and the store and the straw man or the middleman for a site, she would not have entered into that transaction. That's pled specifically in the complaint. And then it's also pled specifically in the complaint all the ways that the optometrist was not independent. Isn't the question, isn't the question, wasn't the question, wasn't the question, wasn't the question? Yes, your honor. We pled it in multiple ways about specifically the lease that the doctor was required to enter into, the facts and circumstances. And I can go through some of those. They couldn't maintain their own records. They were subject to audit. They could be changed from store to store. Excuse me, Judge Payaz. Excuse me. I can't hear Judge Fischer at all. Hold on a minute, Judge Christin. I want to make sure I get his questions, and I just can't hear it at all. I don't know what's going on. I can hear Judge Payaz. I can hear you fine, your honor. But maybe if Judge Payaz moves his microphone slightly towards you. We'll get it going. There's somebody. There's not an easy button up here just to hit it. Yeah, that's what I was looking for. Yeah. Can you hear? There you got it. I can hear that. It's really fuzzy, but I can hear it. All right, let me perhaps just restate in a shorter version my question. Now I can hear it. Did you specifically plead that it was Dr. Rhodes, I think, in this case, that the doctor in question was not independent because of the specific circumstances that were involved in this lease? Dr. Rhodes is in the other case, your honor. This is Dr. Ho. Dr. Ho. And starting with paragraph number 75 in our complaint, we go into detail about the store that the plaintiff visited. We specifically talk in paragraph 78 with Dr. Ho's requirements. And it goes on in specific detail through paragraph 83 over the course of three pages into the specific representations that were made, the specificity Dr. Ho had to enter into with the store, and the importance to Ms. O'Meady, the reliance that Ms. O'Meady placed on those. But did you take it the next step and say that as a result of these conditions that she was not independent, that she was not exercising independent judgment? I believe we did, your honor. I think that that's a fair reading. Of course, up here I can't read every single paragraph of a very long complaint. But I believe we did, and I believe if the court looks at those specific paragraphs, we did. And then there's another plaintiff in this case as well, Teleria. And Teleria is specifically pled also with the same fundamental allegations about the doctor in that case, that that plaintiff visited a Dr. Mendoza, and that they parted with money based upon those representations, those specific representations. I think every complaint probably could always be better. I think that's the way I always look at every document I write. But I think this was pretty good. And I think the allegations do indeed match Hinojos and match Kwikset with respect to what the representations that are required at the pleading stage in order to qualify as a 17-200 case. And I believe that what we did, your honor, was very specifically try to outline that and outline the importance of the independence, the fact that the key issue here was the misrepresentation material. We make that allegation. It is at least as material. The public health or the health concern about someone's eyesight over being a material factor is at least as important as whether or not the question in the Coles case, Hinojos, is whether or not it was on sale. But just to follow up on one of Judge Fisher's questions, there's nothing in the complaint that suggests that she didn't get an entirely competent eye exam, is there? Well, that's what I think. Does that make a difference? I don't think it makes a difference. And the reason I don't think it makes a difference is because the benefit of the bargain, and that's what this is, the cases have referred to this as the benefit of the bargain argument, that the appellees consistently raise in these cases, you got what you paid for, as my mother would say, is what happened here, it doesn't make a difference. Because if it's material, the cases say whether you got what you paid for or not is irrelevant. And the materiality is where the analysis ends, at least at the pleading stage. And we put- Counsel, counsel, I might beg to differ with you on that point just a bit, if I could. I take your point that it was material to her, clearly, just in the same way as the plaintiffs in Kwikset. But what's the strongest argument, if you could just maybe flip back, that this only works if you can show that this optometrist wasn't independent. What's the strongest fact you've got to show from which we should infer lack of independence? Because that's your argument. She didn't get what she paid for. What she paid for was an independent exam. What's the strongest fact from which we can infer lack of independence? An independent exam that doesn't violate the statutes. The strongest facts is really the lease terms here, which we allege, which, as I was thinking about this over the weekend preparing for oral argument. But your client didn't rely on lease terms. Your client relied on a sign on the wall. That's correct. But also relied on the fact that California law would protect her, relied on the fact that she had the reasonable expectation that the doctor was giving an independent exam. Because to rule otherwise would be to hold that these statutes have no practical meaning and no practical import for the protection of the public. And I think that they do. And the fact that this case was specifically brought as violations of the statute and that all were required under 17-203 is to allege that this specific plaintiff has standing in order to be able to bring the case. I think we do. I don't know what more we need to allege rather than they saw the sign that it was independent, they had a reasonable belief that the doctor would be independent of Walmart in first sight, and that they went in there with that knowledge. And then the conclusory allegation, which is, had she known that it wasn't independent, she would not have gone and used the services of that doctor. Mr. Kabat, let me ask you, is there a difference for standing purposes between the allegations of the fraudulent, the alleged fraudulent advertisement and the unlawfulness of the arrangement, the alleged unlawfulness of the arrangement? Because we bring it under both prongs, under both the misrepresentation of the fraudulent prong and the unlawfulness prong. But for the unlawfulness prong, what's the basis for standing there? Well, first of all, I think the district court went off, or as I understand the district court's order, it went off on constitutional standing. Isn't that correct? The district court's order. Two issues. One was Article III, lack of constitutional standing, which I think we've adequately pled. And then the last three issues that the judge raises in the district court was really one combined into one, which is even if you got past standing, you haven't alleged sufficient facts. Under the unlawfulness prong that's alleged, what's the injury in fact? It's the same injury in fact. I don't think you can get away from that. I think the same. Is it traceable? Counsel, how is there traceability? To, I'm sorry, I don't understand the question. Under the unlawfulness prong, how is there traceability? That the exam violated the law, and they collected $58 based upon a violation of law. Are we going to set the balance of your time, Mr. Caviteff? And if I could have a minute added because of the technical difficulty, Your Honor. We'll give you an edit. Thank you very much, Your Honor. Good morning. May it please the court, Karen Baumholt for Respondent, Walmart Stores, Inc. And with me at counsel table is Raymond Cardozo of Reed Smith for Respondent First Sight. If it's OK with the court, I'd like to cede about three minutes of my time to Mr. Cardozo so he could speak to some of those specific first sight issues. I'll start with some introductory remarks, and then I'll talk about the requirements of economic injury under Kwikset and all of the other case law. What's actually pleaded here, and then I'd like to briefly touch on some alternative grounds for affirmance under Rule 9 as well. But just to set the table, this case is about two plaintiffs and two defendants. And every case that comes before this court is about the parties before it. And this one's no different. But on every level, this case is different from all the other cases discussed this morning and in the briefs. So we have two plaintiffs here who have sued two defendants with whom they claim no business transaction. They pay their eye doctors. Those eye doctors are not parties. And the plaintiffs used to claim, this is important, in their original complaint, they used to claim that they had business transaction with Walmart. But they abandoned that in favor of a different theory. In this case, we have two plaintiffs who claim not that they paid too much, but that the doctors actually charged too little for the exams that were received. And again, in their original complaint, they did allege that they thought they might have paid above market value for their exams. But they abandoned that in favor of this theory that the doctors are somehow not independent because they are forced to charge too little for an exam. And in this case, we have leases that are with a vision plan, not with an optician. Walmart is the optician. First Sight is a Noxkeen vision plan. And in this case, we have plaintiffs who are suing to claim some sort of nefarious conduct about a legislative scheme that's now been repealed. And finally, in this case, we have two plaintiffs who after concessions in their reply brief are actually not seeking any available relief. They abandoned injunctive relief in their reply brief here on appeal. They concede that there's no restitutionary remedy available to them because they didn't have a transaction with either defendant. So in short, what we have is a case that's contrived truly to seek an advisory opinion that a leasing structure which did not harm these plaintiffs in any way who seek no available relief was somehow improper under now repealed law. And I cannot conceive of an emptier case with less proper plaintiffs. That's well and good. I understand all of that. And I've read the complaints in both cases. But could you address for a moment why the district court was correct in concluding that there was no standing? Sure, and I think there's two reasons. That's the only issue that I see we have to decide. Was there standing? Correct, I think that is. Well, there's some alternative grounds that we've argued for affirmation. But the district court didn't reach the alternative grounds. That's true, although they would be reviewed de novo so this court would have discretion. But yes, to focus in, Your Honor, on the standing issues, I think there's two reasons why the district court's decision is correct. First, the claim here is actually a little bit unique. So I want to argue briefly that this actually does not fall within the rubric of Kwikset and Hinojos. And then secondly, what the court has keyed in on in argument this morning, is that even if the law is as rigid as the plaintiff's claim, they don't plead the facts necessary to show how their eye doctor's independent medical judgment was actually impacted. So let me just very briefly address Kwikset. And yes, Kwikset and Hinojos do hold that a party needs to allege that he or she would not have purchased the product if they had known X, Y, or Z. Do you understand the complaint to have alleged that? I don't. Well, I do in such a way. What I think they're missing is the X, Y, and Z. But let me first start with what Hinojos and Kwikset actually hold, because we have a party here whose original pleading, again, SCR 10, actually did allege a loss in value. But I think Kwikset and Hinojos actually stand for something very important. And this comes out in some of the later case law like Bauer. Kwikset explains, and I'd like to just read a quote. This is from 329 to 330. For each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same. The consumer has purchased a product that he or she, and this is italics in Kwikset, paid more for than he or she otherwise might have been willing to pay. And the court goes on and says that increment, that extra money paid, is economic injury and affords the consumer standing to sue. Hinojos recognizes that rationale. And that isn't what we have here. We actually have an interesting case where the plaintiff's argument is these exams were below market. Well, isn't the plaintiff saying, I don't care what the price of this exam was. If it was $25, $49, or $79, it's not independent. I'm not going for it. I'm not going to pay anything for an exam that's not by an independent optometrist. I do, but if you allow- Isn't that what they're saying? I think that is what they're attempting to allege. But I think if you allow that broad of an inference and you don't read behind the case law, Kwikset and Hinojos, then you've swallowed the whole rationale of those cases. And Bauer, for example, distinguished- Excuse me, even if you read it the way you want us to read it, it's easy to envision a trial where an economist gets on the stand and put the price tag on that incremental difference, right? Yes, but that's not their theory here. They've chosen to write a theory in which their exams were actually below value. And they do that for a reason because that's the way they're attempting to establish independence. Their original complaint actually did allege this was above market. They're not going to get on and put on an economist to say, here's the increment because it doesn't fit their theory of a lack of independence. You think we make that determination at this stage? I do in this case because of the way  and the theory in which they have chosen to assert a lack of independence. Their lack of independence theory comes down to this idea that they charge too little so that they have to see too many patients and maybe they won't get that quality. That's the theory they've set up. And I grant you, it's different from the case law because in the other cases, in Kwikset, in Hinojos, those, the theory- It goes, doesn't it sort of go back to my question? Alleging that, is that enough to show that in fact the two doctors in question here were not independent? And I don't think it does and here's why. First, even if we're in that universe where that's enough to say I wanted an independent doctor and I didn't get one, they're missing the facts specific to them. They don't allege any facts to show that Dr. Ho or Dr. Mendoza, the two doctors that these two plaintiffs saw, were not independent or that their independent medical judgment was in any way controlled by anyone, much less, and this is important because the statutory scheme they're suing under regulates the relationship between optometrists, the doctors, and opticians like Walmart. But what the plaintiff wants to keep ignoring here is that those optometrists and all the lease provisions they want to rely on, which I would submit the district court was correct in ruling, do not plausibly allege a lack of independence. Those lease provisions are with First Sight. Mr. Cardozo can speak more to this, but First Sight is a vision plan. There's no pleading here, other than just the conclusory, well, Walmart must have had an interest here, that Walmart in any way impacted the independence of these doctors. And that's important because that's what the statutory scheme now repealed, regulated. The bottom line is that they argue that these lease provisions could impact the independent medical judgment of one of the optometrists, but they don't argue that any fact from which you could infer that Dr. Ho or Dr. Mendoza either were not independent or provided anything less than an independent medical assessment of their eyes. And it's within these plaintiff's control to say, I didn't get it. I didn't get a long exam. I was told I actually didn't need these glasses that this doctor prescribed. But in any way, those doctors were impacted. And of course, if they were to provide that specificity, the problem they have now is that this is a class action and they're gonna have difficulty proving individualized issues, lack of individualized issues. So it's tactically, they chose to rely solely on the broad scheme. The facts that they allege and that council referred to are just a repeat of the overall lease provisions that they say apply to everyone. They do not allege any specific facts. To turn- They don't allege an injury in fact. They have not alleged economic injury. Well, right. But more importantly- Injury in fact, we're talking about constitution. I understand the district court to have dismissed this case on standing grounds on article three basis, not statutory standard. Well, I think the district court actually blends the two, but obviously the case law, I know it was quick set all of these cases that we've all briefed and the plaintiff has conceded require a different level at the statutory standing inquiry, which is economic injury, a loss of money. That's what quick set stands for. That's what prop 64 stands for. So I don't think there's any dispute there. The question is whether or not they've met it. Now, just to speak briefly to the unlawfulness issue, there's no debating this. They still have to allege a loss of money to have economic injury under the statutes. The inquiry is exactly the same. And the one case they cite, Madrazo, says just that. It held that the plaintiff presented evidence of economic injury because she could show she still owed $12,000 on a motorcycle where the dealer had failed to put the pricing tag on the motorcycle. So again, I come back to my first point, which is this is like all of those other cases where the alleged failure impacts a valuation that the consumer is going to make. And if you say all that's required is that there be some violation of law somewhere in the chain, you swallow standing requirements, Article III and statutory standing. Demeter, which was submitted to the court in a 28J letter, explains just that. You have to allege that something happened to you. And Demeter's actually a very important case because it's very similar in the sense that, well, there's a violation I didn't know about and I made assumptions that there was a compliance with law. But the court says you still have to show that this impacted you in some way. Just very briefly, and I understand that the court does not have to reach alternative grounds if the court were not to agree with us on standing, but we have urged Rule 9 grounds for affirmance in our briefing. And I would also say that as a result of the abandonment of the injunctive relief that was sought in abandonment in the plaintiff's reply brief on appeal, there's still another ground. It's settled law, and we brief this to the court, that non-restitutionary discouragement is not available. They conceded, but they call the issue somehow hypothetical. But it's beyond dispute that restitution's not available here. They had no transaction  And as for damages that might be available under the other provisions, again, I would say, and urge the court to focus on the fact that their theory requires the court to assume a below-market value for this service. I didn't really think, I didn't really try to think through what they're seeking in terms of relief, but I thought that one of their allegations was that the rent that the optometrist paid was based upon the number of patients they saw. Well, the lease provision- Or am I getting that confused with the other case? Well, no, the lease provision that's alleged here between First Sight and the optometrists does have a net income provision, according to the pleading. Yeah, based on the, which is based on the number of patients that the optometrist sees. Well, I mean, I guess, in theory. Isn't that what they're complaining about? That is the jump that they're asking the court to make. And that Walmart's rent that Walmart collects from Vision is also based on that same- There's no allegation, I don't believe, that that is true, and I don't believe it to be true. In fact, that the Walmart lease- Well, I guess we don't know, because we haven't seen that. Right, you haven't seen it. That lease is not available. You haven't, but the allegation is that the rent that First Sight receives is impacted, but they haven't, it's undisputed. I mean, it's very subtle law that you cannot obtain restitution unless you had the defendant receive money from you. I mean, and there's no allegation here that that happened, and it didn't, because they paid their optometrists. I would like to give Mr. Cardozo a couple of minutes, and I see that I'm- You have two minutes. Running out of time. Anyone who's walked through a mall in the last several decades knows that the Vision healthcare industry has long operated under the impression that these are proper types of structures, and the legislature's now made clear it agrees. These plaintiffs benefited from all that by getting an eye exam. They don't say it was wrong. Just let me ask, if I could, one question. Was the arrangement legal under California law at the time? I believe it was. I believe it absolutely was, because the regulations regulate the relationship between Walmart and optometrists, and First Sight is a Vision plan that is not so regulated. There's nothing wrong with the provisions, and on top of that, even the lease provisions that they allege, I think the district court correctly held, they're not violative of anything. They're commercial lease terms, and I'd like to give the remainder of my time  Thank you. Thank you, your honors. The argument has well illuminated why there was an absence of the specific allegations that these particular plaintiffs did not receive a, quote, independent exam from these particular doctors. As my colleague pointed out, there was nothing particular about the exam that they've alleged that showed a lack of independence. My point on behalf of First Sight is there's an even more profound lack of specificity. They don't allege that First Sight represented anything to them. So if you look at First Sight, they're not an optician. They're not subject to any of these regulations prohibiting them from leasing to optometrists. They're not alleged to have made any representations whatsoever in this case to these plaintiffs. Counsel, forgive me for interrupting, but your arguments, which are well-briefed, really strike me as 12B6 arguments, going to Twombly, but going to the adequacy and whether the complaint is impermissibly vague or conclusory, maybe I should say conclusory. But I agree with Judge Pius. I read this district court order as dismissing on standing, and even more specifically than that, dismissing for lack of economic injury. So why does your argument help us with what's really before us? Yeah, it is actually a standing argument, your honor, because what they must show is they lost money or property as a result of the unfair competition. And how they tried to make that allegation is through this claim that they were promised an independent doctor of optometry, which means they must show that they received, what they received was not an independent doctor of optometry but what they must show with regard to First Sight is that it made that promise in the first place. They never alleged that as to First Sight. First Sight's the landlord. So as to First Sight, they don't even have step one, the representation, which is essential to standing. But their argument against First Sight is as the landlord or as the lessor of the property of this, I guess you're a sub-lessor. We're the lessor and then we lease from Walmart. Right, but their allegation is that you have all these restrictive requirements in the way in which they run their business as part of your lease. But to have standing, they have to show that they relied on that in some way and they get that through a representation that they say is in Walmart stores, which my colleague has pointed out doesn't get them there because they haven't shown anything about the eye exam that wasn't independent. But as to First Sight, they don't even have the representation. And by the way, all the restrictions First Sight imposes, perfectly legal, it is not an optician. Those regulations only apply to opticians. They have not given any basis why the judgment as to First Sight can be reversed. They haven't shown illegality, they haven't shown representations, they have not shown standing. Okay, thank you, Counselor. Thank you, Your Honor. All right, Mr. Cabotac. Thank you, Your Honors. I guess it troubles me that these defendants continue to argue in this case that they did nothing illegal. A plain reading of Section 655, 2551 and the regulations makes this patently illegal and exactly why, as we allege- To make a difference that First Sight is the sub-lessor? Not a bit of difference. Or the lessor? They're a straw man. And that's the reason that Walmart did this. Walmart did this specifically because they thought they could circumvent 655. They seem to think that it makes a difference that they're the lessor. That they're the lessor of Walmart. They're Walmart's lessee. And then they turn around and they sublease to the doctors, to the various doctors. And we argue that that's a end run around 6055 and the other statutes here. And that's exactly what it is. They violated the law. They went out and violated the law to get my clients to come in and part with their $58. And now what they want to argue is, it's okay we violated the law. It's okay that we ran afoul of maybe a hundred years of rules and regulations in California to set up something that troubles the public and that is a potential danger to the public. And now we get off scot-free because we've set up this sort of middleman arrangement. And because you can't show Mr. Kabatek that your clients didn't get what they paid for, that it doesn't make any difference that we made these misrepresentations and we violated the law. And I think that's what it ultimately comes down to. And if that's the truth, then why would the court have ruled in Hinojos that a misrepresentation about sale, even though the person got the merchandise that they paid for, or in Kwikset made in the USA, even though they got the Leatherman tool or whatever it was there that they paid for, why would that be at a higher standard than someone's eye care or someone's healthcare? I'd be happy to answer any questions. In Hinojos, what if the allegation had been that they didn't allege that they bought something that had never been sold at regular price, but rather they alleged that at times coal had sold items that had not been actually sold at regular price. Would that have made a difference in that case? I'm having a hard time following the hypothetical because I'm not trying to be cute with the court. I just didn't understand the hypothetical. Well, I just mean, suppose they made a general allegation in that case about coal, that coal sometimes marks on sale items that were never sold at full price. I understand what you're saying. Then that would be a very different case than I'd agree, there'd be no misrepresentation, there'd be no reliance, there'd be no standing. Isn't that very similar to this case? Except for the fact that they did make a representation that was an independent doctor of optometry, and in coals, there was no statutory violation even close to the level here, and that my client specifically alleged that they relied on the doctor to be independent with and without that sign being present. So those are different facts. If you completely change the facts here, there was no sign of independent doctor of optometry. If the doctor, Dr. Ho in this case, rented space arm's length from the store, from Walmart, then there wouldn't be a case, but that's just not the facts we have before us. Okay, thank you, Mr. Caput. Thank you very much. Thank you all. Thank you very much.  we're gonna jump over DiCarlo for a moment, and we're gonna take up three consolidated cases for argument, United States of America versus Anguiano, United States of America versus Doyle, and United States of America versus Choi. And I believe Ms. Zoe Dolan is representing all three defendants.
judges: Fisher, Paez, Christen